**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| BURL MATHIAS and DESIREE MATHIAS | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )     Case No.: 01 C 6329 |
| | ) |
| ACCOR ECONOMY LODGING, INC. | )     Judge Joan Lefkow |
| and MOTEL 6 OPERATING L.P. | )     Magistrate Judge Ashman |
| | ) |
| Defendants. | ) |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO BAR EVIDENCE CONCERNING THE CAROLYN STANLEY INCIDENT

NOW COME the Plaintiffs, DESIREE MATHIAS and BURL MATHIAS, by their attorneys, PETER S. STAMATIS and ROBERT P. CUMMINS, and in response to Defendants' Motion in Limine to bar evidence concerning Carolyn Stanley, state as follows:

### *Preliminary Statement*

Defendants offered the same arguments contained in this motion—that a *Cimex lectularius* infestation in one of their New Mexico motels in 1996 is unrelated to a Chicago *Cimex lectularius* infestation in 2000—to Judge Ashman during the discovery of this matter. It is hard to imagine a more succinct response to this misdirection than the words of Judge Ashman himself:

> No, no, that's not what he's saying. Not that you had notice that there's a problem. You had notice that if there's a problem, it's serious and you have to pay serious attention to it, because these people, according to the papers presented to me, these people brought the bugs home and infested their home, so this is not just an overnight inconvenience. This is a serious problem which the company ought to pay all kinds of serious attention to. So it isn't notice that there is a problem. It's notice of the magnitude of the problem if it exists anywhere.

*122*

### *Factual Background*

From October 29, 1996 until November 2, 1996, Ms. Carolyn Stanley of Morrison, Colorado spent four nights at a Motel 6 in Albuquerque, New Mexico. After awaking during the early morning hours of November 2, 1996, Ms. Stanley turned on the lights in her room and noticed that insects were crawling on her bed and inside her nightgown. The insects were later identified as *Cimex lectularius*. Ms. Stanley complained to the Motel's management, was refunded her last night's stay and returned home. In early 1997, Ms. Stanley developed large blotches and welts on her body. The source of her illness was unknown until April 16, 1996, when, in order to catch an early flight out of Denver, Ms. Stanley turned on the lights in her own bedroom and discovered dozens of insects crawling on her, on her husband and in their bed. Ms. Stanley immediately recognized the insects as the same type she saw in the Albuquerque Motel 6. The Stanley family then embarked on an odyssey to rid their home of this vermin. Among other things, they ripped out the carpet in their bedrooms, discarded mattresses, covered their furniture in industrial grade plastic for a year, hired exterminators, and laundered bedding to kill the insects, their eggs and to remove the insect's blood fecal stains.

Ms. Stanley first advised the president of Motel 6, Georges LeMener, of her home infestation on April 22, 1997. A copy of that correspondence is attached hereto as Exhibit A. Two weeks later, on or about May 5, 1997, Ms. Stanley wrote defendants again, mainly president and CEO, Georges LeMener, and their president of Quality Assurance, David O'Shaughnessy. A copy of both those letters are attached hereto as Group Exhibit B. In both those letters, Ms. Stanley, who had by that time learned a great deal about her uninvited house guests, wrote:

> Bedbugs do not have to inhabit a "dirty place"; they hitch-hike in, and also hitch-hike out. I truly regret that the desk clerk had not expressed further interest in my statement, as a quick examination would have shown that the "bugs" were indeed bedbugs, and the advice of not taking my luggage into my house would have eliminated the current problem.

Two days later, Ms. Stanley wrote Stacy Searous, Director of Motel 6 Guest Relations.

A copy of the Searous letter is attached hereto as Exhibit C. In this letter, she sent

defendants information concerning her property damage, confirmed sending defendants

some treatises on *Cimex lectularius* and stated:

> As I knew nothing about them until now, I am also finding that many people think of [bedbugs] as simply a myth - "don't let the bedbugs bite." Not included are facts that bedbugs have the ability to sense a person's body heat the moment you walk into the room; they prefer women, children as the blood vessels are closer to the surface of the skin. They tend to avoid men as their skin is tougher. If you read the material you may better understand why this situation has been so traumatic. . . We are still itching and jumping at any spot that we see.

In closing, Mrs. Stanley expressed the following sentiments to defendants:

> I would hope that at least my experience would lead to disbursement of such information to members of the Guest Relations Department and the Risk Department so that any other guest would not have to be subjected to the accusatory treatment I received.

Evidence that the defendants were on notice, for at least four years before the

Mathias' arrival in Chicago, of the seriousness of exposing its guests to a *Cimex*

*lectularius* infestation is admissible at trial. The evidence is a matter of weight for the

jury and the jury has a right to hear it.

A.    **Evidence of Notice to the Defendants of the Virulent Nature of *Cimex lectularius* and the Propensity for This Insect to be Transferred From Defendants' Motels to Their Customers' Homes is Admissible Under Rules 401 and 402.**

Federal Rule of Evidence 402 declares all "relevant evidence" admissible at trial unless precluded by the United States constitution or other federal statutes or rules. Fed. R. Evid. 402. "Relevant Evidence" is defined as any evidence that tends to make "the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In other words, evidence is relevant whenever it possesses some logical probative value toward some fact that is legally of consequence to a case. While the Rules provide, under certain circumstances for the exclusion of evidence at trial that is relevant, exclusion is justified only when the "probative value" of the evidence is *substantially* outweighed by the danger of *unfair* prejudice, the evidence causes confusion, delay, or the evidence is misleading or cumulative. Fed. R. Evid. 403. *See also United States v. Dervisevic,* 2002 WL 76973, *1 (N.D. Ill. 2002) (Lefkow) ("in applying the balancing test of Rule 403 "relevant evidence should only be excluded if its probative value is *substantially* outweighed by any of the listed concerns in Rule 403." *citing to United States v. Jackson,* 886 F.2d 838, 847 (7th Cir. 1989). Further, in weighing the considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission. *United States v. Denberg,* 212 F.3d 987, 993 (7th Cir. 2000). Finally, Rule 403 is an extraordinary remedy to be used sparingly as it permits the trial court to exclude otherwise relevant evidence. *United States v. Meester,* 762 F.2d 867, 875 (11th Cir. 1985).

The evidence at issue goes directly to prove the willful, wanton and reckless nature of the defendants' conduct. Specifically, the evidence shows that while they knew that placing their guests in an infested room could result not only in physical and psychological injury, but in the infestation's transportation to the guest's home, defendants still rented room 504 to Burl and Desiree Mathias. Further, the testimony of Mrs. Stanley and the correspondences between Mrs. Stanley and defendants prove the allegations in Count V – Willful and Wanton Negligence, where plaintiffs' specifically seek:

> An award of punitive damages for the above described actions and for exposing their guests to a bedbug infestation that *could, among other things, be unwittingly transported to customers' homes*, in an amount in excess of $5,000,000 to punish both Defendants for their actions and to deter them and others like the from committing such acts in the future.

The Carolyn Stanley incident put the defendants on notice of the seriousness of a *Cimex lectularius* infestation should one occur. This evidence should not be withheld from the jury. For this reason alone Mrs. Stanley should be permitted to testify at trial.

**B.     Evidence of Notice to the Defendants of the Proclivity of *Cimex lectularius* to be Transported from Defendants' Motels to Their Customer's Homes is Likewise Admissible Under Rule 404.**

The Federal Rules of Evidence provide for the admission of evidence of a defendant's prior acts whenever such evidence is used to prove a defendant's knowledge of a dangerous condition and the absence of a defendant's "mistake" or "accident." Fed. R. Evid. 404(b). Under Rule 404(b), such "notice" evidence is admissible whenever the proponent can establish: 1) the evidence is directed toward establishing a matter in issue other than the defendants' propensity to commit the alleged act; 2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter

in issue; 3) the evidence is sufficient to support a jury finding that a defendant committed a similar act; and 4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice. *Okai v. Verfut*, 275 F.3d 606, 610 (7th Cir. 2001).

With regard to the Carolyn Stanley incident, all four of the above elements are established and evidence Mrs. Stanley's injuries and her home infestation. The evidence should not be hidden from the jury. First, Mrs. Stanley confirms defendants' knowledge of the seriousness of exposing people to a *Cimex lectularius* infestation and the absence of "mistake" or "accident" on defendants' part when they rented the Mathiases room 504. Second, the evidence establishes defendants' pattern of conduct which continued over the next four years, until the Mathias arrived at the Chicago location in November, 2000. Third, the Carolyn Stanley incident and the incident with the plaintiffs involves the exact same conduct by defendants—the renting of a room with a *Cimex lectularius* infestation; Fourth, the evidence has probative value that is not substantially outweighed by the danger of *unfair* prejudice. There is nothing *unfair* about advising the jury that the defendants' were made aware of the hazards associated with a *Cimex lectularius* infestation. Indeed the evidence confirms, among other things, defendants' knowledge and belies their claims of ignorance and inadvertence. For these reasons as well, defendants' motion should be denied.

WHEREFORE, the plaintiffs, Burl Mathias and Desiree Mathias respectfully requests this Honorable Court enter an order allowing the jury to hear of defendants' prior conduct and denying defendants' motion in limine.

Respectfully submitted

One of the attorneys for Burl
Mathias and Desiree Mathias

PETER S. STAMATIS
Law Offices of Peter Stamatis, P.C.
77 West Wacker Drive, Ste. 4800
Chicago, Illinois 60601
Telephone: (312) 606-0045
Facsimile: (312) 606-0085

ROBERT P. CUMMINS
Cummins & Cronin
77 West Wacker Drive, Ste. 4800
Chicago, Illinois 60601
Telephone: (312) 578-0500
Facsimile: (312) 578-1234

# *See Case File for Exhibits*