IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| BURL MATHIAS and DESIREE MATHIAS,<br><br>Plaintiffs,<br><br>v.<br><br>ACCOR ECONOMY LODGING, INC. et al.<br><br>Defendant. | No. 01 C 6329<br><br>Judge Joan Lefkow<br>Magistrate Judge Ashman |

### NOTICE OF FILING

TO: Peter S. Stamatis   Robert P. Cummins
     77 W. Wacker Dr. Suite 4800   77 W. Wacker Dr. Suite 4800
     Chicago, Illinois 60601   Chicago, Illinois 60601

    You are hereby notified that on September 20, 2002 we have filed with the Clerk of the Court the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO AMEND OR ALTER JUDGMENT**, copies of which are served upon you.

### CERTIFICATE OF DELIVERY

    Timothy J. Murphy hereby certifies under penalty of perjury as provided by law pursuant to the applicable court rules that the above notice and attached pleadings were served upon counsel of record by hand delivery on September 20, 2002.

_____
One of Attorneys of Defendants,
ACCOR ECONOMY LODGING, INC. and MOTEL 6
OPERATING L.P.

Timothy J. Murphy
Maureen A. McGuire
MacCABE & McGUIRE
77 West Wacker Drive, #3333
Chicago, IL 60601
M:\ORANGE\51-100\-155\Notice of filing 9 20 02.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| BURL MATHIAS and DESIREE MATHIAS, <br><br> Plaintiffs, <br><br> v. <br><br> ACCOR ECONOMY LODGING, INC. and MOTEL 6 OPERATING L.P. <br><br> Defendants. | No. 01 C 6329 <br><br> Judge Joan Lefkow <br> Magistrate Judge Ashman |

### REPLY MEMORANDUM IN SUPPORT OF
### DEFENDANTS' MOTION TO AMEND OR ALTER JUDGMENT

Defendants, ACCOR ECONOMY LODGING, INC. ("ACCOR") and MOTEL 6 OPERATING L.P., ("MOTEL 6"), by their attorneys, Maureen A. McGuire and Timothy J. Murphy, for their Reply Memorandum in Support of their Motion to Amend or Alter the Judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure, states as follows:

**I.  It Is Proper For This Court to Consider Whether It Erred By Submitting Punitive Damages to the Jury**

In their response to defendants' Motion to Alter and Amend, plaintiffs argue that defendants Rule 59 (e) motion is improper. At the outset, it should be noted that plaintiffs and defendants agree as to the applicable standard under Rule 59. Defendants agree that *Moro v. Shell* is controlling and states that the parties may not raise novel arguments under a motion to alter or amend and the rule does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment. 91 F.3d 872, 876 (7th Cir. 1996).

Rule 59 (e), is appropriate when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties or has made an error not of reasoning but of apprehension." *Russell v. Delco Remy Division of General Motors*

1



*Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Manifest error is found when there is a disregard, misapplication, or failure to recognize controlling precedent. *Oto v. Metropolitan Life Insurance Co.* 224 F.3d 601 (7th Cit. 2000).

In the instant case, defendants do not "misunderstand" Rule 59 as suggested by plaintiffs. Instead, defendants' motion addressed this court's misapplication and misinterpretation of the law and facts to "allow this court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir. 1986).

In fact, other courts have reviewed both liability and damages issues in the context of a Rule 59 (e) motion. *RKI, Inc., d/b/a Roll Kraft v. Grimes*, 200 F. Supp. 2d 916 (2002) (Upon a Rule 59 (e) Motion, Magistrate Judge Menlow reviewed both the basis for and amount of punitive damages.) Further support for utilizing Rule 59 (e) for this purpose was demonstrated in *All West Pet Supply Co. v. Hill's Pet Products Div., Colgate-Palmolive Co.* 847 F. Supp. 858 (D. Kan 1994) (District Court reviewed its findings to determine whether it committed a manifest error of law.) Similarly, defendants in the instant case properly filed a Rule 59 (e) motion arguing that the court misunderstood the facts or misapplied the law when it submitted the issue of punitive damages to the jury.

### A. It Was Error To Submit Punitive Damages To The Jury Under a Battery Theory Based Solely On Circumstantial Evidence

As stated in defendants' Motion, this Court erred by submitting punitive damages to the jury because there was neither direct nor circumstantial evidence that defendants committed a battery against plaintiffs. At the outset, because there was no direct evidence that defendants' conduct was intentional, the court considered whether there was sufficient circumstantial evidence of defendants' knowledge or intent. The court found that there was sufficient circumstantial

evidence because the jury could infer that the front desk clerk was aware of the "do not rent" status of room 504, and that the hotel was at full capacity and the clerk went ahead and rented the room anyway. (Trial Trans., Vol. 5A, p. 642).

This court committed error because it disregarded the established law on circumstantial evidence. As explained in defendants' motion, circumstantial evidence must support an inference that is reasonable and probable and not merely possible. Importantly, if the circumstantial evidence allows for the inference of the non-existence of a fact that is just as probable as its existence, then the conclusion that it exists is not a reasonable inference, but a matter of speculation, surmise and conjecture. *Consolino v. Thompson*, 127 Ill. App. 3d 31, 468 N.E.2d 422, 424, 82 Ill. Dec. 160, 162 (4th Dist. 1984).

Plaintiffs' response fails to address *Warren v. Lemay*, a case under the Illinois Consumer Fraud act where defendants failed to disclose part of a home inspection report that revealed termite activity. *Warren v. Lemay* demonstrates the degree of circumstantial evidence required to prove intent. In that case, the court found the evidence properly established intent because defendant knew the purpose of the termite report, understood the termite report would be relied on by plaintiffs, risked financial loss by its production, and failed to disclose it. Unlike the instant case, the *Warren* court concluded that based on the evidence presented, there was "no doubt" the jury could reasonably infer intent. *Warren* 142 Ill. App. 3d 550, 492 N.E. 2d 464, 96 Ill. Dec. 418 (5th Dist 1986).

The circumstantial evidence in the instant case, however, is susceptible to contrary inferences indicating defendants' conduct was not intentional. For these reasons, the court erred when it found there was sufficient circumstantial evidence to establish defendant's intent under a battery theory.

3

Plaintiffs make no attempt to dispute that it is improper for this court to assume that the front desk clerk had the same knowledge as the corporate defendants. As demonstrated above, there is insufficient circumstantial evidence to establish that the desk clerk intentionally placed plaintiffs in a room knowing they would be injured. In fact, plaintiffs concede this point in their response since they are unable to cite any evidence of the clerk's knowledge or intent. In fact, all of the evidence cited by plaintiffs involves knowledge held by the corporations through documents. Plaintiffs cite to no evidence that even infers that the desk clerk had access to or knowledge of those records.

Further, plaintiffs make no response to defendants' point that corporate agents are not presumed to have the same knowledge as the corporation. *McAffee v. Rockford Coca-Cola Bottling*, 40 Ill App. 3d 521, 352 N.E. 2d 50, 52 (2nd Dist 1976) is directly on point. In that case, plaintiff applied for employment with defendant's agents and was advised he had the job. The *McAffee* court granted summary judgment and held that although a corporation may possess knowledge, its agents may not necessarily possess that knowledge. Under *McAffee,* despite the plaintiffs' numerous allegations of the knowledge of Accor and Motel 6, that knowledge cannot be imputed to the desk clerk who assigned plaintiffs their room to demonstrate those actions were intentional. Because there was insufficient evidence to establish defendants' desk clerk acted intentionally, it was error to submit the battery count to the jury.

### B. It Was Error To Submit Punitive Damages to The Jury Under A Willful and Wanton Theory

Plaintiffs repeat their argument that this court should not reconsider whether it was error to submit punitive damages to the jury under a theory of willful and wanton negligence. Defendants' reply to that argument was previously stated in section I of this brief and will not be restated.

4

### 1. Defendants Were Not Aware of A Dangerous Condition And Exercised Ordinary Care In Response to Insect Sightings

In their response, plaintiffs accuse defendants of misleading the court by failing to state the applicable legal standard in reliance on *Ziarko v. Soo Line Railroad*, 161 Ill. 2d 267, 274, 641 N.E. 2d 402, 406, 204 Ill. Dec. 178, 182 (1994). This is the same case defendants cited and argued, and plaintiffs' criticisms are inaccurate and confusing.

The instant case is identical to *Loitz v. Remington Arms Co., Inc.* In *Loitz*, the Illinois Supreme Court denied the plaintiff's request for punitive damages and held that defendant did not have actual knowledge of the defect. 138 Ill.2d 404, 563 N.E.2d 397, 150 Ill.Dec. 510 (1990). In Loitz, the plaintiff was injured when the barrel of the shotgun he was using exploded.

Similar to the instant case, the main issue in *Loitz* was whether there was sufficient evidence to submit punitive damages to the jury. In *Loitz*, plaintiffs argued punitive damages were appropriate because Remington knew of the defect and dangerous propensity of the gun. In support, plaintiff presented testimony from three other individuals and about 94 prior incidents involving injuries with the same weapon. Plaintiff also produced evidence of 100 incidents of barrel explosions in 1979 that did not result in personal injuries. The plaintiff claimed that the evidence of the 94 prior incidents involving injuries with the same weapon demonstrated that Remington had notice of the defective nature of the firearm and failed to take adequate measures. *Id.* at 513.

The *Loitz* court found that the evidence of prior incidents did not demonstrate defendant had actual knowledge of the defect and failed to take adequate precautions. The court found that Remington investigated each prior incident and in good faith concluded that they were caused by high-pressured shells. Furthermore, the court explained that in determining whether to award punitive damages it was important to consider the number of complaints and lawsuits with the

5

total number of products sold and the frequency of the product's use. The *Loitz* court found that the complaints cited by plaintiff represented only .003% of the total products sold and did not establish knowledge of a defect. Additionally, the court noted that there was no evidence of what caused the barrel explosions in the 100 other incidents submitted by plaintiffs, so they did not demonstrate defendant's knowledge of a defect. *Id.* at 517.

In further support of the punitive damage claim, the plaintiff introduced evidence that several years prior to the occurrence, the plaintiff's expert, Dr. Levinson, warned Remington about the dangers associated with the metal used to manufacture the barrel of the shotgun at issue. Dr. Levinson testified at trial that following the accident, Remington redesigned the shotgun at issue and took additional measures to thicken the walls of the shotgun barrel. The *Loitz* court found that although Remington was made aware of Dr. Levinson's opinions through prior litigation, it was not required to embrace his views. In fact, the evidence demonstrated that Remington conducted extensive research before marketing its barrels and determined that it utilized the most suitable material for production.

The court in *Loitz* held that conduct sufficient to support an award for punitive damages must be outrageous either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others. The *Loitz* court held there was not sufficient proof Remington had actual knowledge of the defect or failed to take adequate measures to protect its consumers.

Similar to the plaintiff in *Loitz*, plaintiffs in this case attempt to argue there was sufficient evidence to establish that defendants had knowledge of a dangerous condition and failed to exercise ordinary care. Plaintiffs argued throughout this litigation that any prior sighting of a bed

6

bug, tick, cockroach, or other insect established defendants' knowledge of a dangerous condition and that they failed to exercise ordinary care.

Although plaintiffs argue the prior occurrences of insects demonstrate defendants' actual knowledge, these incidents should not have been considered because they were not *substantially similar* to the subject incident. Plaintiffs attempt to argue that the fact defendants made room refunds demonstrated they knew of the bed bug problem. Plaintiffs failed to demonstrate these refunds were given due to the presence of bed bugs. More importantly, there is no evidence that the prior incidents were substantially similar to the present case, i.e. that defendants had previously placed guests in rooms marked down. Similar to *Loitz*, the prior occurrences in this case are unrelated to the allegedly defective condition and do not establish defendants' awareness.

Like the defendants in *Loitz*, the defendants herein acted in good faith by investigating all complaints and reports of insect activity at their property. The testimony was uncontroverted that once defendants were aware of an insect sighting, they put the room down, contacted their national extermination service, had the room exterminated, and did not rent it until it was safe. In the instant case, once defendants learned of an insect problem in Room 504, they contacted Ecolab immediately. Similar to *Loitz*, defendants in this case acted reasonably and exercised ordinary care in responding to a problem.

Furthermore, plaintiffs claim defendants had knowledge of a dangerous condition because manager Linda Conte claimed she discussed the bed bug problem with William Holmes and recommended that the entire motel be shut down for treatment. Similar to *Loitz* where the court rejected that Dr. Levinson's opinions in prior litigation put Remington on notice, defendants in the instant case were not required to embrace Ms. Conte's recommendations. The

7

evidence demonstrated defendants adequately responded to each bed bug sighting. Furthermore, defendants' district manager testified that he was unaware of recommendations that the hotel be shut down and he would have done so if necessary. (Trial Trans. Vol. 4A, p. 490). Because defendants acted responsibly in response to the bed bug sightings, Ms. Conte's purported recommendations were insufficient to establish their knowledge of a dangerous condition.

### 2. It Is Proper For This Court To Reconsider The Corporate Complicity Argument

Plaintiffs further argue it is improper for this Court to reconsider defendants' argument concerning corporate complicity because it was 1) already rejected by the court and 2) is a new argument that should have been raised at trial. Corporate complicity was properly raised in defendants' motion because defendants repeatedly argued at trial that defendants did not know their agents were renting rooms after bugs were discovered. At trial, the jury was instructed that under the corporate complicity doctrine:

"Punitive Damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:

(a) The principal authorized the doing and the manner of the act,
(b) The agent was unfit and the principal was reckless in employing him,
(c) The agent was employed in a managerial capacity, and was acting in the scope of his employment; or
(d) The principal or a managerial agent of the principal ratified or approved the act."

There was no evidence that the elements of corporate complicity were satisfied and it was error to submit punitive damages to the jury. Instead, plaintiffs merely argue that defendants fail to take responsibility for their actions. In support of their argument, plaintiffs again cite the prior complaints of insect activity, the refunds, and the recommendations by Linda Conte and Robert Graves. However, none of this evidence establishes that the desk clerk knew plaintiffs were assigned to a room with bed bugs or that this action was authorized or approved by a manager.

8

None of this evidence excuses plaintiffs from the requirement of proving that the corporation must know of or ratify its agent's acts in order to be liable for punitive damages. *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F. 2d 1086 (7th Cir. 1992) involved a claim under the Fair Housing Act. In *Matchmaker*, plaintiffs alleged that defendants, through its agents, committed illegal racial steering by selecting properties based on the applicant's race. After a bench trial, this district court ruled in favor of plaintiffs and awarded compensatory and punitive damages. *Id.* at 1094. In its decision, this court reasoned that punitive damages were appropriate against the corporation and sole shareholder, Erwin Ernst, because after a complaint was filed, he did not investigate whether his agents were behaving in a discriminatory manner. This court found the failure to investigate was knowledgeable inaction and awarded punitive damages. *Id.* at 1100.

On appeal, this court was reversed on the issue of punitive damages against Erwin Ernst and the corporation. According to the appellate court, a principal is liable for punitive damages for the acts of his agents only if he knew of or ratified those actions. Because there was nothing to suggest that the sole shareholder knew of or ratified the actions in *Matchmaker*, punitive damages were inappropriate. Similar to Matchmaker, there was no evidence of knowledge or ratification by Motel 6 or Accor, and the court erred when it submitted punitive damages to the jury.

## II. The Excessive Punitive Damage Award Violates the Defendant's Due Process Rights.

There is no disagreement between the plaintiffs and defendants on the standard used by federal district courts and federal appellate courts in reviewing punitive damage awards. The case of *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.C. 1589, 134 Law Ed. 2d 809 (1996), establishes three "guideposts" for review of whether a punitive damage award is grossly

9

excessive in relation to legitimate punitive damage objectives, and hence an arbitrary deprivation of life, liberty, or property in violation of the due process clause. *BMW*, 517 U.S. at 585 (Justice Breyer, concurring opinion). Under all three guide posts set out in *BMW*, the punitive damage award in this case does not withstand constitutional scrutiny.

## A. The Exemplary Damages Are Disproportionate to the Gravity of the Defendant's Offense.

The Supreme Court Decision in *BMW* holds that the initial and most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct. The court suggests that a hierarchy of reprehensibility, with acts of violence or threats of bodily harm being the most reprehensible, followed by acts taken in reckless disregard for other's health or safety, affirmative acts of trickery and deceit, and finally, acts of omission and mere negligence. Florez v. Delbovo, 939 F. Sub. 1341, 1348 (N. Dist. Ill., 1996), *citing to BMW*, 517 U.S. at 576, 116 S.C. at 1598. The plaintiffs erroneously characterize the jury's finding of willful and wanton conduct as being based upon both deception and violence on the part of the defendants. A review of the jury's verdict fails to reveal that such a conclusion was reached by the jury. The jury found liability on both battery and negligence counts. Plaintiffs' argument is premised upon an assumption that the punitive damages were assessed under the battery count as opposed to the negligence count. No such indication is found in the record. It is equally possible that the jury assessed punitive damages under the negligence count, in which case the conduct of the defendants would be the least degree of reprehensibility under the Supreme Court's analysis.

Part of the analysis in determining whether a punitive damage award is excessive is the harm that is likely to result from the defendant's conduct as well as the harm that actually occurred. A *BMW* at 581, citing to *Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S.

10

1, 22, 11 S.C. 1032, 1045 (1991). In this case there was no evidence submitted regarding the likelihood of future damages to either Burl or Desiree Mathias or to any other guest of the Motel 6. As demonstrated by the evidence, this was the only occasion where a room that had been removed from service for extermination services was rented to a guest before treatment by Ecolab, a nationally respected pest control company. This incident was an anomaly. Further, testimony was introduced that this motel was completely renovated beginning in January 2001, less than 2 months after this incident. This evidence establishes that future harm was unlikely to result from the defendant's conduct. Factoring this into the court's calculus and its assessment of the constitutional propriety of the punitive damage award, a single incident, arising out of the negligence of an employee, does not support the $372,000 in punitive damages assessed by the jury.

The evidence in this case revealed no deliberate false statements, affirmative misconduct, concealment of evidence of improper motives such as was present in *TXO Production Corporation v. Alliance Resources Corp.*, 509 U.S. 442, 113 S.C. 2711, 125 Led. 2d 366 (1993), the case upon which the plaintiffs rely.

### B. The Ratio of Punitive Damages to Compensatory Damages is Disproportionate.

The ratio between compensatory and punitive damages is a significant factor that has been endorsed many times by the United States Supreme Court. The principle that exemplary damages must bear a reasonable relationship to compensatory damages has a long pedigree and was endorsed by the Supreme Court in the *BMW* case, 517 U.S. at 580, 116 S.C. at 1601. In fact, the Supreme Court recognized that this ratio is the most commonly cited indicium of an unreasonable or excessive punitive damage award. *BMW 517 U.S. at 580, 116 S.C. at 1601.* Plaintiffs' pejorative and insulting comments are neither helpful nor persuasive for the court's

consideration of this guide post in determining whether a remittitur is merited. Plaintiffs' argument that the defendants attempt that reduce the issue of due process to a mathematical formula that straightjackets the court is wholly inaccurate and demonstrates the plaintiffs' cavalier attitude toward the due process issues raised in defendant's motion.

Plaintiffs cite to *Shay v. Galaxy Lumbar Construction Company Ltd.*, 152 F. 3d 729 (7th Circuit 1998) and *Timm v. Progressive Steal Treating, Inc.*, 137 F. 3d 1009 (7th Circuit 1998), to support its finding that the relationship between the punitive damages award and the compensatory damages award in this case is not unreasonable. Both cases were civil rights actions brought pursuant to § 1983, which allows for the imposition of punitive damages without any compensatory damage award. In Shay, the actual damages awarded were $1 with a punitive damage award of $2,500. In Timm, there were no compensatory damages, but a punitive damage award of $15,000. As such, these cases are neither analogous to the instant case, nor do either of those punitive damage awards reach a level that would be considered excessive in any instance.

Like a skipping compact disc, the plaintiffs repeat *ad nauseum* that the defendants are large successful companies. Their argument implies that a defendant's ability to pay a punitive damage award relieves this court from the necessity of ensuring the constitutionality of that finding. The plaintiffs cite no case law to support this proposition or their suggestion that the award in this case does not reach "drop in the bucket status." The financial condition of a defendant is not one of the guide posts listed by the Supreme Court in the *BMW* decision. The wealth of the defendants cannot save a punishment that is deemed to excessive under the *BMW* approach. *Flores v. Delbovo*, 939 F. Sub. 1341, 1349, (N. Dist. Ill. 1996). In *Flores*, the defendant was The Tandy Corporation, also a billion dollar corporation. Judge Coar reduced the

punitive damages from $750,000 to $275,000 stating that a punitive damage award of 4 times the amount of compensatory damages in a different case was close to the line in terms of constitutional propriety, *Flores* at 1348. The ratio of 37.2 to 1 between punitive damages and compensatory damages in this case crosses the line of constitutional propriety. The defendant's motion for alteration of judgment and for remittitur should be granted.

### C. The Comparison to Sanctions for Comparable Misconduct.

The unique factual situation presented by this case makes locating a case of similar or comparable misconduct for the purpose of evaluating the punitive damage award difficult. Defendants cited to the case of *Howe v. Mooningham*, 139 Ill. App. 3d 1018, 47 N.E. 2d 1281, 94 Ill. Dec. 404 (5th Dist. 1986), because it arose from a punitive damage award arising from an intentional tort, that being battery. In *Howe*, the defendant intentionally struck the plaintiff with a shovel resulting in permanent injuries and disabilities. The plaintiff was awarded $30,000 in compensatory damages and the same sum in punitive damages. On review, the Appellate Court found that the $30,000 punitive damage award was reasonable. Assuming *arguendo*, as plaintiffs argue, the defendant's action was one of violence, the *Howe* case is clearly applicable. The $30,000 in punitive damages upheld in *Howe* was for conduct much more egregious than the actions of the defendants herein. The court surely recalls that the plaintiffs herein suffered insect bites, some embarrassment, but no permanent injury.

Plaintiffs continually assert that the defendant's motion to alter or amend judgment should be denied because of defendant's "continued failure to accept responsibility for their actions." (Plaintiff's brief at page 11.) Apparently, the plaintiff's believe that the court's role in deciding the Rule 59 motion is comparable to mitigation testimony at a sentencing hearing. Plaintiff's comments show a lack of understanding of the purpose and reasoning of the

13

defendant's motion. Though an award of punitive damages should be set aside only if it exceeds an amount necessary to achieve both punishment and deterrence, an award that constitutes a mere windfall to the prevailing party is inappropriate. *EEOC v. Mid-Continent Security Agency, Inc.*, 2001 WL 8000089 (N.D. Ill. 2001).

## CONCLUSION

WHEREFORE, defendants ACCOR ECONOMY LODGING, INC. and MOTEL 6 OPERATING L.P., by their attorneys, Maureen A. McGuire and Timothy J. Murphy, respectfully request that this honorable court strike the punitive damage award or alternatively, reduce the award of punitive damages in accordance with Rule 59 of the Federal Rules of Civil Procedure for the reasons cited herein.

Respectfully submitted,

MacCabe & McGuire

By: _____
One of Attorneys for Defendants,
ACCOR ECONOMY LODGING, INC. and
MOTEL 6 OPERATING L.P.

Timothy J. Murphy
MacCabe & McGuire
77 West Wacker Drive, Suite 3333
Chicago, IL 60601
Phone: 312-357-2600
Fax:    312-357-0317
M:\ORANGE\51-100\-155\reply brief part II.doc

14